SHER TREMONTE LLP

March 6, 2023

**BY ECF**

The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: *United States v. Carlos Watson*, 23-CR-82 (EK)**

Dear Judge Komitee:

We represent Carlos Watson in the above-referenced matter. We write, further to the oral motion made during the March 6, 2023 status conference to respectfully request that the Court modify the conditions of Mr. Watson's bond to remove the no-contact condition. For the reasons set forth below, the government has failed to proffer evidence sufficient to meet its heavy constitutional and statutory burden to show that a no-contact condition is necessary to ensure the safety of the community or prevent supposed obstructive conduct.[1]

**Background**

Mr. Watson was arrested on February 23, 2023. That same day, the government submitted a letter to the Court requesting conditions on Mr. Watson's pre-trial release. *See* Dkt. No. 6. In that letter, the government requested: (1) a "substantial secured bond" of a value constituting a "significant portion" of Mr. Watson's assets; (2) travel restrictions; (3) a condition forbidding Mr. Watson from "attempting to obtain investments or loans for Ozy or any other business"; (4) a condition forbidding Mr. Watson from "attempting to obstruct the prosecution or retaliating against witnesses"; and, as relevant here, (5) a condition forbidding Mr. Watson from "contact with his co-defendant, Ozy Media, Inc., including any current or former officers, employees, or directors of Ozy, except in the presence of [] counsel" and from "any contact at all" with "investors in or lenders to Ozy," "individuals or entities whom [Mr.] Watson or Ozy solicited for investments in or loans to Ozy," and "any other co-conspirators, victims or witnesses," without the government's consent. *Id.* at 8-9. Magistrate Judge Pollak set a

[1] Following today's court conference, we contacted the government to propose that the bond be modified to permit Mr. Watson to contact employees about matters relating to the wind-down of the business without the presence of counsel. The government did not agree with this proposed modification.

$1,000,000 bond and imposed the government's other requested conditions, including the no contact order. Dkt. No. 10. On March 6, 2023, the undersigned counsel appeared and advised this Court that Mr. Watson opposed the no-contact condition and moved to strike it from the bond.

**Discussion**

Under the Bail Reform Act, a court must order the pre-trial release of a defendant subject to the "least restrictive further condition, or combination of conditions" that the court determines will "reasonably assure" the appearance of the defendant. 18 U.S.C. § 3142(c)(1)(B); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). The government bears the burden of showing that a challenged condition is appropriate. *See United States v. Schlegel*, No. 06-CR-550 (JS), 2008 WL 11338900, at *2 (E.D.N.Y. June 13, 2008). The government's burden is further heightened here because the no-contact condition "implicates the First Amendment right of association." *United States v. Arzberger*, 59 F. Supp. 2d 590, 603 (S.D.N.Y. 2008). Conditions that limit a defendant's First Amendment right to association are particularly problematic when they limit contact "necessary for business purposes." *See United States v. Spilotro*, 786 F.2d 808, 817 (8th Cir. 1986). Accordingly, the government must demonstrate that the no-contact condition is "necessary" based on "particularized evidence" as to the defendant, and the Court in turn must make an "individualized determination" as to whether the condition is necessary. *See id.* at 603-04; *United States v. Bronfman*, No. 18-cr-204-NGG-VMS, Dkt. No. 240, at 4-5 (E.D.N.Y. Dec. 12, 2018); *see also United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990) ("Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant."). Further, the Bail Reform Act requires that the Court apply the statute in a manner consistent with the presumption of innocence. 18 U.S.C. § 3142(j).

In its letter to Magistrate Judge Pollak, the government offered four reasons to justify its requested bail conditions, including the imposition of the no-contact condition: (1) the alleged offense is serious, and Mr. Watson faces severe penalties if convicted; (2) the evidence against Mr. Watson is purportedly strong; (3) Mr. Watson's alleged conduct "suggests that he does not have a truthful or reliable character"; and (4) Mr. Watson may obstruct the prosecution, retaliate against witnesses, or continue alleged fraudulent conduct. Dkt. No. 6 at 8.

The government's first three reasons, which are the kind typically proffered in support of any conditions of pretrial release, are not pertinent to the Court's determination as to whether the government has satisfied its burden to support a no-contact condition.[2] Allegations of fraudulent and dishonest conduct alone, however strong, cannot justify a no-contact condition. *United States v. Lillemoe*, No. 3:15CR00025 (JCH), 2015 WL 9694385, at *3 (D. Conn. May 28, 2015) (Merriam, J.)

---

[2] The third of the government's reasons is part of an unusual and inappropriate string of attacks on Mr. Watson's character in this case.

(concluding that "automatic application of [a no-contact] restriction in all fraud cases would be improper" and that "[t]he Court cannot assume that a certain restriction is necessary in all cases of a certain type").

The government's fourth and final reason could arguably support a no-contact condition, were it supported by particularized evidence that indicated a risk of obstruction, retaliation against witnesses, or further alleged fraudulent conduct. But it is not. The government has proffered no such evidence. Instead, in support of its claim, the government offers two assertions: *First*, the government alleges that Mr. Watson retaliated against two Ozy executives—Samir Rao and Suzee Han—when they began cooperating with the government. According to the government, Ozy agreed to pay Rao's and Han's legal bills in September 2021, but stopped when it learned that they were cooperating with the government's investigation in December 2021. *Id.* at 4. The government claims that Mr. Watson must have made this decision because he was the only person with the authority to do so. *Id.* *Second*, the government alleges that Mr. Watson attempted to raise new money for Ozy from advertisers and investors as recently as early February of 2023. *Id.* at 8.

Neither allegation meets the government's heavy constitutional and statutory burden to justify a no-contact condition. The government's allegation regarding Ozy's non-payment of Rao's and Han's legal fees does not suffice for a litany of reasons. As an initial matter, the allegation in the government's letter suggests that all communications regarding the legal fees for Rao and Han were done through counsel and involved in the legal process, including litigation in Delaware Chancery Court regarding advancement of fees. The government's letter does not suggest – and there is no evidence to support – that these actions by Ozy's counsel were undertaken in bad faith. The government suggests that Ozy attempted improperly to condition the advancement of fees on Rao signing an affirmation disclaiming having engaged in fraudulent conduct. While it is unclear what affirmation the government is referring to, such a condition and undertaking is common and legally authorized in insurance policies covering director and officer liability under Delaware law. These actions – again on the part of Ozy's counsel, not Mr. Watson – in no way suggest that Mr. Watson engaged in witness tampering or any other improper behavior.[3]

What is more, the events at issue are far removed in time and cannot justify the scope of the no-contact condition. According to the government's letter, the latest communications with Rao's counsel regarding any refusal to pay further fees was in January 2022 – and after Ozy had already paid hundreds of thousands of dollars in Rao and Han's attorney's fees. The government's letter does not allege any recent attempt to

---

3 Given that all the conduct the government alleges raises a concern was done through counsel, it is not clear why the government's requested no-contact condition permits contact with employees with the presence of counsel.

influence the testimony of Rao or Han.[4] Moreover, the government's requested no-contact condition is not limited to Rao and Han; it covers *all* employees, former investors, and former lenders. The government has provided no evidence that it is likely or even possible for Mr. Watson to use the same tactic against other potential witnesses.

Furthermore, the government's use of Ozy's alleged non-payment of attorneys' fees to obtain a no-contact condition runs afoul of internal Department of Justice guidance. The McNulty Memo provides in operative part that "[p]rosecutors generally should not take into account whether a corporation is advancing attorneys' fees to employees or agents under investigation" in determining whether a corporation has cooperated with the government. *See* John J. Rehmann, *Paying the Price: Should Corporations' Payment of Their Employees' Legal Fees Be a Factor in Corporate Indictment Decisions?*, 26 Wash. U. J.L. & Pol'y, 379, 399 (2008). By the same token, prosecutors should similarly refrain from using a corporation's refusal or failure to advance attorneys' fees as an argument for imposing more onerous pretrial conditions on an executive of that corporation.

The government's allegation regarding Mr. Watson's contact with investors in early February is equally insufficient. The government offers no contention (much less any proffered evidence) that this contact involved any misrepresentations, fraudulent or otherwise. In any event, that alleged conduct occurred prior to Mr. Watson's arrest, and there is no suggestion that the contact in any way obstructed the government's investigation prior to the operations of the company being suspended in response to the indictment.

While the company has suspended operations, Mr. Watson is currently working with Delaware counsel to determine the best way to wind down operations and potentially dissolve the company. Those conversations are ongoing but it will take some time to choose and then execute whatever is determined to be the best path forward. In the meantime, prior to the indictment, Ozy was running its newsletters, multiple television shows and podcasts, planning its next festival and working with recipients of the Ozy Award. There were approximately fifteen employees working on those projects. The indictment of Mr. Watson and the company has thrown all of those projects and the livelihoods of the people working on them into uncertainty. At a minimum, Mr. Watson needs to have contact with those employees to determine what, if anything, will be done with the content on which they were working, as well as more workaday issues relating to running a company such as his employees' health insurance, unpaid expenses, 401k's, and eligibility for unemployment. His inability to communicate with these

---

[4] In *United States v. Bankman-Fried*, No. 1:22-cr-00673-LAK (S.D.N.Y. Dec. 22, 2022), the government did not seek such a broad no-contact condition (and did not indict the company). *See id.* Dkt. No. 13. Only after the government came forward with *actual evidence* that it contended showed the defendant had attempted to engage in witness tampering with former employees, *id.* at Dkt. No. 50, did the court consider a no-contact condition.

individuals without counsel is compounding and has the potential to prolong the current economic fallout at the company.

For the foregoing reasons, we respectfully request that the Court modify the bond to strike the no-contact order.

Respectfully submitted,

/s/*Noam Biale*

Noam Biale
Justine A. Harris
Michael Tremonte
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
T: (212) 202-2600
F: (212) 202-4156
nbiale@shertremonte.com

*Attorneys for Carlos Watson*

cc: Assistant U.S. Attorneys Jonathan Siegel, Gillian Kassner, and Dylan A. Stern (by ECF)