MKM/DCP:JRS/GK/DAS
F.#2021R00900

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

                                  Docket No. 23-CR-82 (EK)

CARLOS WATSON and
OZY MEDIA, INC.,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


THE GOVERNMENT'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT CARLOS WATSON'S MOTION TO DISMISS THE INDICTMENT


                                     BREON PEACE
                                     United States Attorney
                                     Eastern District of New York
                                     271 Cadman Plaza East
                                     Brooklyn, New York 11201


Jonathan Siegel
Gillian Kassner
Dylan A. Stern
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    I.    The Defendant's Motion to Dismiss for Inadequate Facts Is Procedurally
    Improper .................................................................................................................. 2

        A.    Applicable Law ............................................................................................ 2

        B.    Discussion ................................................................................................... 4

    II.    The Defendant Fails to Establish a Prima Facie Case of Selective Prosecution .... 8

        A.    Applicable Law ............................................................................................ 8

        B.    The Defendant's Conclusory Assertions Do Not Establish a Prima
            Facie Case of Selective Prosecution ...................................................... 10

            1.    The Defendant Fails to Establish a Discriminatory Effect ............10

            2.    The Defendant Fails to Establish a Discriminatory Purpose ........15

CONCLUSION ...................................................................................................................... 20

TABLE OF AUTHORITIES

Bordenkircher v. Hayes,
   434 U.S. 357 (1978) .................................................................................................. 8

Burris v. Nassau Cnty. Dist. Att'y,
   No. 14-CV-5540 (JFB) (GRB), 2017 WL 9485714 (E.D.N.Y. Jan. 12, 2017),
   report and recommendation adopted,
   No. 14-CV-5540 (JFB), 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017) ................................. 12

Dubin v. United States,
   143 S. Ct. 1557 (2023) ....................................................................................... 6, 7

Freidus v. Barclays Bank PLC,
   734 F.3d 132 (2d Cir. 2013) ................................................................................. 5

LaTrieste Rest. v. Vill. of Port Chester,
   188 F.3d 65 (2d Cir. 1999) ................................................................................. 12

Neder v. United States,
   527 U.S. 1 (1999) ............................................................................................... 7

Oyler v. Boles,
   368 U.S. 448 (1962) ............................................................................................ 9

United States v. Aiyer,
   33 F.4th 97 (2d Cir. 2022) ........................................................................... 2, 3, 4

United States v. Alameh,
   341 F.3d 167 (2d Cir. 2003) ........................................................................... 9, 10

United States v. Aleynikov,
   676 F.3d 71 (2d Cir. 2012) .................................................................................. 7

United States v. Armstrong,
   517 U.S. 456 (1996) .................................................................. 8, 9, 10, 11, 13, 18

United States v. Avenatti,
   433 F. Supp. 3d 552 (S.D.N.Y. 2020) ................................................................. 11

United States v. Bass,
   536 U.S. 862 (2002) .......................................................................................... 18

United States v. Benjamin,
   No. 21-CR-706 (JPO), 2022 WL 17417038 (S.D.N.Y. Dec. 5, 2022) ....................... 4

United States v. Bilzerian,
    926 F.2d 1285 (2d Cir. 1991) ................................................................. 5

United States v. Contorinis,
    692 F.3d 136 (2d Cir. 2012) ................................................................. 7

United States v. Dawkins,
    999 F.3d 767 (2d Cir. 2021) ........................................................... 2, 3, 4

United States v. Eppolito,
    543 F.3d 25 (2d Cir. 2008) ................................................................. 6

United States v. Fares,
    978 F.2d 52 (2d Cir. 1992) ........................................................... 12, 13

United States v. Garcia-Pena,
    No. 17-CR-363 (GBD), 2018 WL 6985220 (S.D.N.Y. Dec. 19, 2018) ............................... 19

United States v. Hommosany,
    208 F.3d 204, 2000 WL 254050 (2d Cir. 2000) (unpublished table decision) ...................... 12

United States v. Ji,
    No. 21-CR-265 (PKC), 2022 WL 595259 (E.D.N.Y. Feb. 28, 2022) ................................... 4

United States v. Lamar,
    No. 14-CR-726 (PGG), 2015 WL 4720282 (S.D.N.Y. Aug. 7, 2015) ................................. 19

United States v. Landesman,
    17 F.4th 298 (2d Cir. 2021) ................................................................. 5

United States v. Liburd,
    No. 17-CR-296 (PKC), 2021 WL 4521964 (E.D.N.Y. Oct. 3, 2021) ................................. 8

United States v. Litvak,
    808 F.3d 160 (2d Cir. 2015) ............................................................... 5, 7

United States v. Litvak,
    889 F.3d 56 (2d Cir. 2018) ................................................................. 7

United States v. Melzer,
    No. 20-CR-314 (GHW), 2021 WL 4847383 (S.D.N.Y. Oct. 15, 2021) ................................. 2

United States v. Murph,
    452 F. App'x 31 (2d Cir. 2011) ............................................................. 15

United States v. Parnas,
    No. 19-CR-725 (JPO), 2021 WL 2981567 (S.D.N.Y. July 14, 2021) ........................... 11, 15

United States v. Phillips,
    No. 22-CR-138 (LJL), 2023 WL 5671227 (S.D.N.Y. Sept. 1, 2023)......................................4

United States v. Pirro,
    212 F.3d 86 (2d Cir. 2000).............................................................................................7, 8

United States v. Sampson,
    898 F.3d 270 (2d Cir. 2018)...........................................................................................3, 4

United States v. Sanders,
    211 F.3d 711 (2d Cir. 2000)............................................................................................10

United States v. Sun Myung Moon,
    718 F.2d 1210 (2d Cir. 1983)......................................................................................9, 10

United States v. Viera,
    No. 14-CR-83 (ER), 2015 WL 3833797 (S.D.N.Y. June 19, 2015)....................................19

United States v. Vilar,
    729 F.3d 62 (2d Cir. 2013)................................................................................................7

United States v. Wedd,
    993 F.3d 104 (2d Cir. 2021)..................................................................................2, 4, 6, 7

United States v. Weimert,
    819 F.3d 351 (7th Cir. 2016) ............................................................................................7

Wayte v. United States,
    470 U.S. 598 (1985)...............................................................................................8, 9, 10

Yick Wo v. Hopkins,
    118 U.S. 356 (1886)........................................................................................................13

PRELIMINARY STATEMENT

The defendant Carlos Watson moves to dismiss the Indictment against him (1) on the basis that the Indictment does not allege sufficient facts to support the charges; and (2) for selective prosecution.  See ECF Dkt. Nos. 84, 84-1 ("Def. Br.").  The motion is without merit and should be denied.

First, the defendant's motion to dismiss for insufficient facts is procedurally improper.  The Second Circuit has repeatedly held that such motions cannot be considered pretrial — controlling authority that the defendant wholly ignores.  The government intends to prove its case at trial, and the assessment of the government's proof is reserved for the jury.

Second, the defendant's unfounded accusations that he was singled out on account of his race are false and fall far short of the rigorous standard required to make out a prima facie case of selective prosecution.  The defendant premises his claim on unsubstantiated accusations that (1) five individuals at two other media companies — one of whom is the reporter who wrote the New York Times article about Ozy's fraud that led to the company's collapse — engaged in criminal conduct but were not prosecuted; and (2) the prosecutors assigned to this case targeted the defendant because of his race.  The defendant's personal attacks on his perceived enemies in the media and government — which he has previously disseminated in a press release and on at least two websites to raise money for his defense — do not withstand scrutiny.[1]  Race did not

---

[1]    See Press Release, Too Black for Business: Carlos Watson Defense Team Asks Justice Department to Conduct Racial Bias Investigation of Brooklyn Prosecutors After Revelations They Charge Blacks and Other People of Color in 90 Percent of Cases (June 21, 2023), https://www.prnewswire.com/news-releases/too-black-for-business-carlos-watson-defense-team-asks-justice-department-to-conduct-racial-bias-investigation-of-brooklyn-prosecutors-after-revelations-they-charge-blacks-and-other-people-of-color-in-90-percent-of-cases-301856388.html; Too Black for Business, https://tooblackforbusiness.org (fundraising website for the defendant); OZY, https://www.ozy.com/timeline and https://www.ozy.com/get-involved (redesigned Ozy website including fundraising solicitations and accusations against prosecutors and the media).

factor in any way into the defendant's charges.  To the contrary, as set forth in the Indictment, the defendant was charged solely because of his own brazen criminal scheme.

The motion should therefore be denied.

ARGUMENT

I.    The Defendant's Motion to Dismiss for Inadequate Facts Is Procedurally Improper

    A.    Applicable Law

On a motion alleging a defect in the indictment pursuant to Fed. R. Crim. P. 12(b)(3)(B), "an indictment is sufficient as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense."  United States v. Aiyer, 33 F.4th 97, 116 (2d Cir. 2022).  "To satisfy these requirements, an indictment need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  United States v. Dawkins, 999 F.3d 767, 779 (2d Cir. 2021).

Even where the above requirements are satisfied, a defendant will sometimes attempt to argue pretrial that the "factual allegations in the" indictment are not "consistent with the charged violations."  Id. at 780.  The Second Circuit has repeatedly held that such arguments are improper, explaining, "At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense.  That is something we do after trial."  United States v. Wedd, 993 F.3d 104, 121 (2d Cir. 2021); accord Dawkins, 999 F.3d at 780; see also United States v. Melzer, No. 20-CR-314 (GHW), 2021 WL 4847383, at *3 (S.D.N.Y. Oct. 15, 2021) ("The Second Circuit has twice recently reminded us that a district court does not evaluate the adequacy of the facts set forth to satisfy the elements of a charged offense.").

Such an argument "ask[s] district courts to engage in summary judgment proceedings — something that does not exist in federal criminal procedure." Dawkins, 999 F.3d at 780; accord Aiyer, 33 F.4th at 117 ("summary judgment does not exist in federal criminal procedure"). In United States v. Sampson, 898 F.3d 270 (2d Cir. 2018), the Second Circuit explained why motions raising such arguments are inconsistent with the structure of the Federal Rules of Criminal Procedure. First, to "overcome such motions, the government might need to reveal its complete case before trial," which "would upset the policy choices reflected in the criminal discovery rules — and provide an advantage to the defense that the Rules' drafters did not intend." Id. at 280-81. Second, and "more fundamentally, authorizing district court judges to resolve dispositive fact-based evidentiary disputes on Rule 12(b) motions risks invading the inviolable function of the jury in our criminal justice system." Id. at 281. "[W]hen a defense raises a factual dispute that is inextricably intertwined with a defendant's potential culpability, a judge cannot resolve that dispute on a Rule 12(b) motion." Id.

The sole potential exception to this rule is where the government makes "a full proffer of the evidence it intends to present at trial," which must include "a detailed presentation of the entirety of the evidence." Id. at 282. This exception "is extraordinarily narrow." Id.; see also id. at 283 n.11 (noting that exception was satisfied in prior case where government provided "a point-by-point outline of how [it] would establish each element of the indictment's counts, including testimony that the government intended to present at trial"). This exception is not satisfied by a "speaking indictment," even where the allegations provide "significant detail about the factual nature of the charges." Dawkins, 999 F.3d at 779; compare id. (describing indictment in that case as "a 'speaking indictment' that provided significant detail about the factual nature of

the charges"), with id. at 780 (refusing to consider "whether certain factual allegations in the Superseding Indictment . . . were consistent with the charged violations").[2]

B.    Discussion

The defendant makes no argument that the Indictment does not "contain[] the elements of the offense[s] charged and fairly inform[] [him] of the charge[s] against which he must defend," or "enable[] [him] to plead an acquittal or conviction in bar of future prosecutions for the same offense." Aiyer, 33 F.4th at 116.  Nor could he, as the Indictment plainly "track[s] the language of the statute[s] charged and state[s] the time and place (in approximate terms) of the alleged crime[s]," which is all that is required.  Dawkins, 999 F.3d at 779.  The defendant's motion should therefore be denied on that basis alone.

The defendant's arguments instead focus on whether the facts alleged in the Indictment would be sufficient to convict him.  That is precisely the kind of argument that the Second Circuit has held may not be made pretrial, and the Court should refuse to consider them. See Aiyer, 33 F.4th at 116-17; Dawkins, 999 F.3d at 780; Wedd, 993 F.3d at 121; Sampson, 898 F.3d at 281-82.[3]

---

[2]    See also United States v. Phillips, No. 22-CR-138 (LJL), 2023 WL 5671227, at *4 (S.D.N.Y. Sept. 1, 2023) ("A speaking indictment alone does not satisfy the 'full proffer' requirement; the government must proffer all of its evidence." (emphasis in original)); United States v. Ji, No. 21-CR-265 (PKC), 2022 WL 595259, at *7 (E.D.N.Y. Feb. 28, 2022) (exception not satisfied "where, as here, the indictment is a 'speaking indictment' — i.e., an indictment that contains details beyond those typically necessary under Rule 7(c)(1)"; "the Court declines to restrict the Government because it elected to provide more detailed allegations than are required").  The government is aware of one case that found a speaking indictment sufficient to satisfy this exception, United States v. Benjamin, No. 21-CR-706 (JPO), 2022 WL 17417038, at *17 (S.D.N.Y. Dec. 5, 2022).  A fully briefed and argued appeal by the government from that decision is currently pending before the Second Circuit.  See United States v. Migdol (Benjamin), No. 22-3091 (2d Cir.).

[3]    Notably, the defendant has not addressed, or even cited, the relevant authority governing his motion.

For example, the defendant argues that Counts One and Two (charging conspiracies to commit securities fraud and wire fraud) should be dismissed because (he claims) certain of the misstatements alleged in the Indictment were not material as a matter of law, such as allegations that the defendant lied about who would be the "lead investor" for investment rounds.  See Def. Br. 24-26.  But "[d]etermination of materiality is a mixed question of law and fact that the Supreme Court has stated is especially well suited for jury determination."  United States v. Bilzerian, 926 F.2d 1285, 1298 (2d Cir. 1991); accord United States v. Landesman, 17 F.4th 298, 340 (2d Cir. 2021); United States v. Litvak, 808 F.3d 160, 175 (2d Cir. 2015).  The defendant offers no reason why the Court should usurp the jury's role to conduct the inquiry itself, let alone why the Court (even if it could decide this issue itself) should conduct this "fact-specific, context-specific inquiry" pretrial without a full record.  Freidus v. Barclays Bank PLC, 734 F.3d 132, 140 (2d Cir. 2013) ("The materiality of statements and omissions . . . is a fact-specific, context-specific inquiry.").  Indeed, in making his arguments, the defendant relies on numerous factual claims about investors in Ozy and what their goals were, several of which the government expects will be disproven at trial.  See, e.g., Def. Br. 25 (arguing that identities of

other investors were not material because "investors were making independent decisions about the likelihood that the company would succeed").[4]

Similarly, the defendant argues Count Three (aggravated identity theft) should be dismissed because (he claims) the facts alleged in the Indictment do not meet the standard for showing that the defendant "'use[d]' another person's means of identification 'in relation to' a predicate offense," as required for a violation of 18 U.S.C. § 1028A.  Def. Br. 18.  This same argument was raised in <u>Wedd</u> — which, again, the defendant does not cite or address — where the defendant argued "that the specific conduct referenced [in the Indictment] . . . did not involve a 'use' of 'a means of identification' for purposes of Section 1028A."  <u>Wedd</u>, 993 F.3d at 121.  The Second Circuit rejected that argument, holding that it would be improper to consider such an argument pretrial "[u]nless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," which the government had not done there, and has not done here.  <u>Id.</u>

The only difference between <u>Wedd</u> and this case is that, since <u>Wedd</u>, the Supreme Court has decided <u>Dubin v. United States</u>, 143 S. Ct. 1557 (2023), which clarified the standard for "use" under Section 1028A.  But while <u>Dubin</u> clarifies what the government must prove at

---

[4]        The defendant also appears to misconstrue the nature of the conspiracy charges against him.  The gravamen of a conspiracy charge is the agreement to defraud; there is no requirement that a defendant actually complete the substantive crime.  <u>See</u> <u>United States v. Eppolito</u>, 543 F.3d 25, 47 (2d Cir. 2008) ("Where there is an agreement to commit an unlawful act, that agreement is a distinct evil, which may exist and be punished whether or not the substantive crime ensues.").  Specific instances of dishonesty are merely evidence that such an agreement existed, and the government can rely at trial on misstatements not charged in the Indictment.  <u>See id.</u> ("Where, as here, the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.").  Thus, even if the Court found that every alleged misstatement in the Indictment were immaterial — which not even the defendant argues — that would not undermine the conspiracies charged in Counts One and Two, as long as the government proves at trial that the defendant agreed that material misstatements would be made.

trial, it does nothing to change <u>Wedd</u>'s procedural holding that any such arguments must wait for trial. <u>Wedd</u>, 993 F.3d at 121 ("At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial.").[5]

The defendant does not cite any authority suggesting that addressing his arguments now would be permissible. Indeed, almost all of the cases the defendant cites in support of his arguments were decided after a full trial on the merits. <u>See</u> <u>Dubin</u>, 143 S. Ct. at 1563-64 (post-trial appeal) (cited at Def. Br. 16-21); <u>Neder v. United States</u>, 527 U.S. 1, 7 (1999) (same) (cited at Def. Br. 22); <u>United States v. Litvak</u>, 889 F.3d 56, 58 (2d Cir. 2018) (same) (cited at Def. Br. 25); <u>United States v. Weimert</u>, 819 F.3d 351, 353-54 (7th Cir. 2016) (same) (cited at Def. Br. 23); <u>Litvak</u>, 808 F.3d at 165 (same) (cited at Def. Br. 24); <u>United States v. Vilar</u>, 729 F.3d 62, 69 (2d Cir. 2013) (same) (cited at Def. Br. 22); <u>United States v. Contorinis</u>, 692 F.3d 136, 141 (2d Cir. 2012) (same) (cited at Def. Br. 22); <u>United States v. Aleynikov</u>, 676 F.3d 71, 73 (2d Cir. 2012) (same) (cited at Def. Br. 15).

The one case cited by the defendant that involved a pretrial dismissal for failure to allege sufficient facts is <u>United States v. Pirro</u>, 212 F.3d 86 (2d Cir. 2000). In <u>Pirro</u>, one of the elements required to be set forth in the indictment was "a material falsehood or an omission that amounted to a material falsehood." <u>Id.</u> at 93. The Second Circuit held an omission can constitute a material falsehood only if the omitted facts were "required to be reported." <u>Id.</u>

---

[5]     In any event, the government anticipates that it will present evidence demonstrating beyond a reasonable doubt that the conduct here satisfies <u>Dubin</u>'s requirements. Under <u>Dubin</u>, the use of "the means of identification [must be] at the crux of what makes the predicate offense criminal, rather than merely an ancillary feature." <u>Dubin</u>, 143 S. Ct. at 1565. When "the underlying crime involves fraud or deceit . . . this entails using a means of identification specifically in a fraudulent or deceitful manner." <u>Id.</u> The government anticipates proving that is exactly what the defendant and his co-conspirators did, at least twice, as part of their fraudulent scheme.

Thus, an indictment relying solely on an omission is insufficient unless it includes allegations providing "the crucial background fact[s] that give[] rise to the duty to disclose the fact that was omitted." Id. Because the Indictment here alleges numerous affirmative misstatements, and because each alleged omission includes background facts explaining why the omission was misleading, Pirro is inapposite.

Simply put, whatever the merit of the defendant's arguments, they are arguments for the jury at trial, not arguments for the Court now. Accordingly, the defendant's motion to dismiss Counts One, Two and Three for a purported defect in the Indictment should be denied.[6]

II.     The Defendant Fails to Establish a Prima Facie Case of Selective Prosecution

    A.     Applicable Law

A selective prosecution claim "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463-64 (1996).

The decision to prosecute or not generally rests within the "broad discretion" of the prosecutor. Wayte v. United States, 470 U.S. 598, 607 (1985); Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). But such

---

[6]     The defendant requests in the alternative that portions of the Indictment which describe "non-criminal" conduct be stricken. Def. Br. 3. The defendant offers no authority or argument in support of this request. To the extent the defendant is seeking to strike surplusage from the Indictment pursuant to Fed. R. Crim. P. 7(d), "[s]uch a motion . . . is granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." United States v. Liburd, No. 17-CR-296 (PKC), 2021 WL 4521964, at *4 (E.D.N.Y. Oct. 3, 2021). Here, allegations of any misstatements by the defendant or his co-conspirators to investors are relevant to prove the existence of the charged conspiracies, and the defendant has not established that any allegations are inflammatory or prejudicial.

prosecutorial discretion is subject to constitutional constraints.  Accordingly, prosecutors may not base a discretionary decision to prosecute upon "an unjustifiable standard such as race, religion, or other arbitrary classification."  Oyler v. Boles, 368 U.S. 448, 456 (1962).

Courts employ a presumption that prosecutors have not violated equal protection of the law.  See Armstrong, 517 U.S. at 464 ("[T]he presumption of regularity supports [prosecutors'] prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").  To make out a claim of selective prosecution, "a defendant confronts a deliberately rigorous standard; he must provide clear evidence that the prosecutorial decision or policy in question had both a discriminatory effect and was motivated by a discriminatory purpose."  United States v. Alameh, 341 F.3d 167, 173 (2d Cir. 2003); see also Armstrong, 517 U.S. at 463 (Supreme Court has "taken great pains to explain that the standard [to establish selective prosecution] is a demanding one").

To show discriminatory effect, a defendant must establish that "while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution."  United States v. Sun Myung Moon, 718 F.2d 1210, 1229 (2d Cir. 1983).

To demonstrate that a prosecutorial act was motivated by a discriminatory purpose, a defendant must establish that "the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."  Id. This requires more than an "awareness of consequences"; it requires a showing that the government "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects."  Wayte, 470 U.S. at 610.  Where a defendant has not

shown that the government prosecuted him "because of" his protected status or conduct, his claim fails.  Id. (emphasis in original).

The standard for discovery is "correspondingly rigorous."  Armstrong, 517 U.S. at 468.  Consistent with a "background presumption that the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims," id. at 463-64, the Second Circuit mandates that no evidentiary hearing or discovery should be ordered unless a district court, in its discretion, finds that a defendant has established a prima facie case that both the discriminatory effect and the discriminatory purpose requirements have been met.  Moon, 718 F.2d at 1229.  This requires that a defendant provide "some evidence of discriminatory effect and intent."  Alameh, 341 F.3d at 173; see also United States v. Sanders, 211 F.3d 711, 717 (2d Cir. 2000) (observing defendant must provide "some evidence tending to show the existence of the essential elements of the defense" and specifying "[t]he standard is a rigorous one").

     B.    The Defendant's Conclusory Assertions Do Not Establish a Prima Facie Case of Selective Prosecution

        1.    The Defendant Fails to Establish a Discriminatory Effect

The defendant fails to adequately allege that the government's prosecution of him was the result of the discriminatory effect of any government charging practice or policy.

To allege discriminatory effect, the defendant relies exclusively on the identification of five individuals from two media organizations — Jonah Peretti, the CEO of BuzzFeed; Ben Smith, a reporter who formerly worked at BuzzFeed and who wrote of Ozy's fraudulent conduct in the New York Times; and Shane Smith, Gavin McInnes and Suroosh Alvi of Vice Media — whom he accuses of "engaging in conduct of the type forming the basis of the charge against [the defendant]," and whom the government has not prosecuted.  Def. Br. 27.

10

As an initial matter, none of these individuals is similarly situated to the defendant. Even taking the defendant's conclusory accusations against these individuals at face value, none of these individuals allegedly fabricated historical revenue numbers for years, as the defendant is alleged to have done. None allegedly provided fake contracts in due diligence, none invented fake customer relationships supposedly earning millions of dollars and none lured investors with made-up acquisition offers from high-profile corporations, each of which the defendant is also alleged to have done. Because the defendant's alleged criminal conduct is more serious and more blatant than anything he accuses these five individuals of, he has failed to identify any similarly situated individuals who were not charged. That is fatal to his claim. See United States v. Parnas, No. 19-CR-725 (JPO), 2021 WL 2981567, at *7 (S.D.N.Y. July 14, 2021) (defendant raising selective prosecution claim must show "that individuals outside the protected class committed roughly the same crime in roughly the same circumstances but were not prosecuted"); United States v. Avenatti, 433 F. Supp. 3d 552, 573 (S.D.N.Y. 2020) (denying selective prosecution motion where uncharged individual cited in defendant's motion was not similarly situated).

Moreover, the defendant's allegations against the identified individuals lack evidentiary support, as they are based entirely on his interpretations of public reporting. See Def. Br. 6-14, 27. Such "hearsay" and "anecdotal evidence" are insufficient to meet a defendant's burden even to obtain discovery on a selective prosecution claim. Armstrong, 517 U.S. at 470. Simply put, a defendant cannot meet his burden on a selective prosecution claim merely by making unsupported allegations about a handful of individuals and claiming that they should have been prosecuted too.

The defendant also offers no evidence that the alleged misconduct by these individuals was ever known to the government, as he would be required to prove to show that the government selectively chose not to prosecute them.  United States v. Hommosany, 208 F.3d 204, 2000 WL 254050, at *2 (2d Cir. 2000) (unpublished table decision) ("To demonstrate selectivity a defendant must show that the prosecuting authority had knowledge of other offenses that it did not prosecute."); LaTrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999) (plaintiff could not establish selective prosecution because plaintiff "failed to show that the Village knew about these [unprosecuted] violations.  Absent such proof, [plaintiff] would be hard-pressed to show that it was singled out for selective treatment."); United States v. Fares, 978 F.2d 52, 60 (2d Cir. 1992) (denying selective prosecution claim where defendant "did not counter with evidence as to large numbers of similarly situated persons known to the government who had not been prosecuted"); accord Burris v. Nassau Cnty. Dist. Att'y, No. 14-CV-5540 (JFB) (GRB), 2017 WL 9485714, at *11 (E.D.N.Y. Jan. 12, 2017), report and recommendation adopted, No. 14-CV-5540 (JFB), 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017).  This failure, even standing alone, is sufficient to defeat his claim.

In addition, contentions that five individuals were not criminally charged out of the millions of individuals who reside in or are otherwise subject to potential prosecution in the Eastern District of New York are plainly inadequate to meet the requisite threshold to demonstrate discriminatory effect.  Hommosany, 2000 WL 254050, at *2 ("In the absence of evidence demonstrating how many individuals the . . . prosecutor knowingly failed to prosecute, we cannot say that the District Court exceeded its allowable discretion in finding that [the defendant] did not present 'some evidence' of having been singled out.").  The defendant fails to cite a single case in which a court has ordered discovery on selective prosecution claims based

12

on such tenuous allegations, and the government is not aware of any.  The lack of precedent supporting the defendant's position is not surprising, as any such finding would defy the strong presumption that prosecutorial decisions are proper by allowing the exception to swallow the rule.  See Armstrong, 517 U.S. at 465.

Indeed, the primary case upon which the defendant relies in support of his argument, United States v. Fares, directly contradicts his position.  In Fares, the Second Circuit held that the district court did not abuse its discretion in denying discovery on the defendant's claim that he was subjected to selective prosecution based on his Hizballah membership.  978 F.2d at 59.  In support of its decision, the Court characterized the defendant's assertion that his was the only prosecution in the Eastern District of New York under a specified statute as "speculative and unduly myopic" and observed that the defendant's claim lacked merit because he failed to present evidence that there were "large numbers of similarly situated persons known to the government who had not been prosecuted."  Id. at 60; cf. Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886) (holding plaintiff successfully demonstrated ordinance was improperly applied against Chinese nationals where authorities denied applications of 200 Chinese individuals but granted applications of 80 individuals who were not Chinese "under similar conditions").

The defendant's claim here fails for similar reasons.  The defendant does not present any evidence that "large numbers of similarly situated" non-Black persons who were known to the government were not charged with wire fraud, securities fraud and aggravated identity theft.  Fares, 978 F.2d at 60.  Instead, he relies on his own selective identification of five individuals he describes as "white" — one of whom reportedly identifies as Pakistani-

Canadian[7] — who were not charged with crimes based on reported past events, some of which occurred more than twenty years ago and some of which occurred in Canada.  See, e.g., Def. Br. 10 & n.23 (conduct allegedly occurring "in Montreal in the mid-1990s"); id. at 11 & n.25 (alleged conduct from 1999); id. at 11 & n.26 (alleged misstatement from 1998).  The assertion that the government did not charge a select handful of individuals, unsupported by any evidence that these individuals actually committed a crime or that the government was aware of their conduct, is not sufficient to meet the stringent requirements of making a prima facie case of selective prosecution.[8]

---

[7]    Although defendant claims that such executives are "white" and their businesses are "white-owned," public sources indicate that Suroosh Alvi identifies as Pakistani-Canadian. Def. Br. 14; see, e.g., Mark Lepage, "The Canadian multimedia outfit Vice hits the big time," The National, June 2, 2013, available at https://www.thenationalnews.com/arts/the-canadian-multimedia-outfit-vice-hits-the-big-time-1.295627.

[8]    Indeed, even a cursory review of recent publicly available press releases issued by the U.S. Attorney's Office for the Eastern District of New York ("EDNY") identifies far more than five non-Black defendants who have been charged with wire fraud, securities fraud and aggravated identity theft offenses within just the past two years.  See, e.g., United States v. Adam Kaplan and Daniel Kaplan, 23-CR-293 (GRB) (two defendants charged with conspiracy to commit wire fraud, wire fraud and other offenses), press release available at https://www.justice.gov/usao-edny/pr/long-island-investment-advisers-indicted-defrauding-clients-millions-dollars; United States v. Donald Finley, 23-CR-181 (JMA) (defendants charged with wire fraud and other offenses), press release available at https://www.justice.gov/usao-edny/pr/long-island-businessman-pleads-guilty-multi-million-dollar-covid-19-loan-fraud; United States v. Zhang et al., 22-CR-458 (LDH) (eleven defendants charged with wire fraud conspiracy, aggravated identity theft and other offenses), press release available at https://www.justice.gov/usao-edny/pr/eleven-defendants-arrested-investment-fraud-money-laundering-and-unlicensed-money; United States v. Anton Napolsky and Valeriia Ermakova, 22-CR-525 (NM) (two defendants charged with wire fraud and other offenses), press release available at https://www.justice.gov/usao-edny/pr/two-russian-nationals-charged-running-massive-e-book-piracy-website; United States v. Jason Peltz, 21-CR-154 (NGG) (defendant charged with securities fraud, among other offenses), press release available at https://www.justice.gov/usao-edny/pr/brooklyn-man-pleads-guilty-insider-trading-and-tax-evasion; United States v. David Motovich, 21-MJ-979 (defendant charged with aggravated identity theft and other offenses), press release available at https://www.justice.gov/usao-edny/pr/brooklyn-business-owner-charged-bank-fraud-identity-theft-and-witness-tampering.

Finally, the defendant's claims that similarly situated individuals of other races have not generally been proceeded against for the kinds of conduct charged in the Indictment are belied by charges brought against the defendant's co-defendants in this case.  In addition to the defendant, the government also charged Samir Rao, Ozy's former Chief Operating Officer, and Suzee Han, Ozy's former Chief of Staff, based on their participation in the same scheme underlying the charges against the defendant and Ozy.  See United States v. Samir Rao, No. 23-CR-47 (EK) (ECF Dkt. No. 1); United States v. Suzee Han, No. 23-CR-48 (EK) (ECF Dkt. No. 1).  Neither Rao nor Han is Black.  Both have since pleaded guilty and accepted responsibility for their crimes.  Such charges directly refute any claim by the defendant that he was singled out for prosecution because of his race.  United States v. Murph, 452 F. App'x 31, 33 (2d Cir. 2011) (denying selective prosecution motion where defendant could not show similarly situated individuals were not prosecuted and observing "indeed, the prosecution of his co-conspirators proves otherwise"); Parnas, 2021 WL 2981567, at *7 (denying selective prosecution motion and observing that "individuals similarly situated to [the defendant] were prosecuted along with [him], including two who share his national origin . . . and one . . . who does not").

For the foregoing reasons, the defendant's claim that his case resulted from the discriminatory effect of any prosecutorial policy or practice is unavailing and should be rejected.

2.    The Defendant Fails to Establish a Discriminatory Purpose

The defendant also fails to present any credible evidence that would suggest, let alone establish, that the charges in his case resulted from any discriminatory purpose.  The sole evidence he proffers to show such a discriminatory purpose is an analysis purportedly demonstrating that the individual Assistant United States Attorneys (AUSAs) assigned to this case have disparately charged defendants who are either Black or, more generally, "non-White,"

using the defendant's terminology.  Def. Br. 28.  The defendant's claims are false, and the Court should reject them.

The defendant's analysis rests on what he purports to be a racial breakdown by percentage of defendants the AUSAs assigned to his case have charged since 2019, which he compares to the racial breakdown of the general population of the Eastern District of New York. Def. Br. 29-30.  This analysis does not offer credible evidence of any discriminatory intent in his or any other case.[9]

First, the defendant's focus on the assigned AUSAs misunderstands how charging decisions are made in the EDNY.  No AUSA, or even a collection of AUSAs, has authority to initiate a prosecution.  Instead, all EDNY cases are opened and investigated by a law enforcement agency.  The evidence obtained during an investigation is then evaluated on the merits and undergoes an extensive review and approval process involving multiple AUSAs at various supervisory levels in advance of charging, with final approval by the U.S. Attorney himself or his designee.  Here, the defendant was also independently charged by the United States Securities and Exchange Commission, which has brought a parallel enforcement action based on the same underlying conduct that gave rise to the Indictment.  Securities and Exchange Commission v. Ozy Media, Inc., No. 23-CV-1424 (ENV) (E.D.N.Y.).  Under such circumstances, a claim that the defendant was charged because of a purported discriminatory animus held by the line AUSAs assigned to the case cannot withstand scrutiny.

---

[9]     The defendant did not attach the data underlying his analysis to his motion and instead noted that it is "available on PACER and through the BOP and can be easily retrieved." Def. Br. 15.  In response to a request by the government, the defendant provided the government with a copy of a spreadsheet containing the data underlying his analysis, which the government has reviewed.  As discussed below, this data is both incomplete and misleading.

The defendant's analysis also suffers from significant flaws.  Contrary to the defendant's implications, the figures cited by the defendant are not based on an analysis of defendants whom the AUSAs assigned to this case have charged.  Instead, as the defendant himself acknowledges, they reflect an analysis of defendants charged in criminal cases since 2019 in which any of the assigned AUSAs have entered a court appearance, including cases charged by other AUSAs as well as violations of supervised release charged by the United States Probation Department.  Def. Br. 29 (explaining that the data upon which the defendant relied included all criminal prosecutions in which the federal prosecutors have "appeared on behalf of the United States").  An analysis of cases in which a prosecutor has made a general court appearance is plainly insufficient to establish any discriminatory animus in charging decisions.  Indeed, as the defendant's own data reflects, the undersigned AUSAs have appeared on behalf of the United States in cases involving hundreds of defendants, including defendants who were charged as early as 1985, more than thirty years before any of the undersigned AUSAs entered government service.[10]

Moreover, the cases underlying the defendant's analysis are not comparable in any way to his case.  The defendant asserts that his data is "particularly troubling in light of the

---

[10]     The data upon which the defendant relies includes other omissions and suffers from other methodological defects.  For example, the data omits some cases in which charges were recently filed, as well as cases in which charges have been filed but remain under seal.  The data also rely on the defendant's assumptions and assessments of the racial identities of many defendants, including those whom the defendant labels as "Hispanic or Latinx."  Def. Br. 29 (acknowledging that "the BOP database does not designate whether an individual defendant is Hispanic" and explaining that the defendant instead reviewed "social media profiles bearing a photograph of the defendant or other indicator of race").  The data also excludes ongoing investigations that have not yet been charged or made public.  Nonetheless, the Court need not address the inaccuracies in the data upon which the defendant relies because, for the reasons stated herein, such statistics are plainly insufficient to establish that the government acted with any discriminatory purpose.

well-known fact that White people commit white-collar crimes with a greater frequency than Black people."  Def. Br. 30.  But this assertion ignores the fact that the same publicly available data upon which he relies confirms that the vast majority of the defendants he identifies were not charged with so-called "white-collar" crimes.  To the contrary, the majority of cases charged by the undersigned AUSAs involve violent crimes or violent criminal enterprises, including international drug trafficking and paramilitary organizations (e.g., the Clan del Golfo and the H-2 Cartel), gangs (e.g., the Bloods, Folk Nation and MS-13), and international sex trafficking organizations.  The races of defendants in such cases have no bearing on the government's decision to prosecute the defendant for conspiracy to commit wire fraud, conspiracy to commit securities fraud and aggravated identity theft.  As the Supreme Court has observed, "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants."  United States v. Bass, 536 U.S. 862, 864 (2002) (emphasis in original).

Lastly, the defendant's comparison of the racial breakdown of the overall population of the Eastern District of New York is an inappropriate benchmark, as it ignores the well-documented fact that crime rates vary among racial groups.  See Armstrong, 517 U.S. at 469-70 (citing statistics); see also U.S. Sent'g Comm'n, 2022 Annual Report and Sourcebook of Federal Sentencing Statistics 48 tbl.5, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/2022-Annual-Report-and-Sourcebook.pdf (providing racial breakdown of offenders by type of crime).  It also ignores the fact that many of the defendants included in the defendant's analysis were, like him, residents of other states or foreign nations, and some faced charges in the District only after being extradited from foreign countries.

Even if the defendant's analysis showed what he claims it shows — which it does not — his claim of discriminatory purpose would nonetheless fail.  It is insufficient to show "discriminatory conduct" generally; a defendant must show that the government "in his case acted with discriminatory purpose."  United States v. Garcia-Pena, No. 17-CR-363 (GBD), 2018 WL 6985220, at *6 (S.D.N.Y. Dec. 19, 2018) (emphasis in original); accord United States v. Lamar, No. 14-CR-726 (PGG), 2015 WL 4720282, at *6 (S.D.N.Y. Aug. 7, 2015); United States v. Viera, No. 14-CR-83 (ER), 2015 WL 3833797, at *4 (S.D.N.Y. June 19, 2015).  The defendant cites no evidence to make that showing.  Nor could he, because race played absolutely no role in the decision to charge the defendant.  The defendant's accusation of discriminatory purpose by individual AUSAs constitutes an improper attempt to shift the focus away from his own criminal conduct and serves as an affront to the government's ongoing effort to pursue justice, promote the safety of the community and uphold the law.

In sum, the defendant has failed to adequately allege that there was anything unusual, let alone improper, about the charging decisions in his case.  Because his allegations fall far short of the rigorous showing necessary to make out a prima facie case warranting the disclosure of discovery, much less the clear and convincing standard required for dismissal for selective prosecution, his motion should be denied.

CONCLUSION

For the reasons set forth above, the government respectfully submits that the

defendant's motion to dismiss is without merit and should be denied in its entirety.

Dated:      Brooklyn, New York
            September 25, 2023

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By:      /s/_____
            Jonathan Siegel
            Gillian Kassner
            Dylan A. Stern
            Assistant United States Attorneys
            (718) 254-6293/6224/6213